# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOSHUA D. LIVINGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **Case No. 04-3459-KHV** |
| DOUG ALAN CRISP, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff *pro se* brings suit against Doug Alan Crisp, Lyon County Jailer, in his individual capacity. Under 42 U.S.C. § 1983, plaintiff alleges that by using excessive force on May 20, 2003 and June 22, 2003, defendant violated his due process rights under the Fourteenth Amendment to be free from cruel and unusual punishment. This matter comes before the Court on defendant's Motion For Summary Judgment (Doc. #21) filed July 22, 2005. For reasons set forth below, the Court finds that defendant's motion should be sustained in part.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute

requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Id. at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.

In pro se prisoner litigation, the Tenth Circuit endorses the completion and filing of a "Martinez report" where the prison constructs an administrative record which details the factual investigation of the events at issue.  See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978).  The Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence.  Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).  The pro se prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit; like the Martinez report, it serves as evidence for a summary judgment determination.  See id.

Plaintiff's opposition brief does not dispute any specific facts in defendant's memorandum. Furthermore, plaintiff does not specifically contradict any of defendant's factual assertions with

2

reference to those portions of the record on which he relies. <u>See</u> D. Kan. Rule 56.1.[1] Plaintiff does

call to the Court's attention portions of several exhibits from defendant's <u>Martinez</u> report. Doc. #14.

Plaintiff also sets forth additional facts in separately numbered paragraphs. He does not cite record

support, however, for those additional facts.

The Court recognizes that *pro se* litigants should not succumb to summary judgment merely

because they fail to comply with the technical requirements involved in defending such a motion.

<u>See</u> <u>Woods v. Roberts</u>, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); <u>Hass v. U.S. Air

Force</u>, 848 F. Supp. 926, 929 (D. Kan. 1994).  The Court has therefore searched the record to

determine whether genuine issues of material fact preclude the entry of summary judgment for

defendant.  Where supported by the record, the Court has included plaintiff's additional facts and

construed them in the light most favorable to plaintiff.

---

[1]     D. Kan. Rule 56.1 provides as follows:

(b) Opposing Memorandum.

(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

(2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply.

For purposes of defendant's motion for summary judgment, the following facts are uncontroverted, deemed admitted or, where disputed, set forth in a light most favorable to plaintiff.

Facts

Plaintiff was incarcerated at the Lyon County Detention Center from December 2002 through October 2003. He alleges that in incidents on May 20 and June 22, 2003, defendant used excessive force and thus inflicted cruel and unusual punishment.

Plaintiff was disruptive on many occasions in the Lyon County Detention Center.[2] On January 24, 2003, plaintiff resisted going to court. Officers had to restrain him and escort him to court. On March 12, 2003, plaintiff violated lockdown by leaving his cell when the door was opened for his cellmate. Officers told plaintiff to go back to his cell, but he refused. Four officers placed him in his cell. On March 26, 2003, plaintiff destroyed county property and was placed on lockdown. On April 11, 2003, officers found contraband in plaintiff's cell.[3] On April 21, April 26 and again on April 27, plaintiff violated lockdown.

On May 1, 2003, plaintiff and his cellmate complained about water in their cell. Defendant told them to use their towels until officers could clean it up. Instead, plaintiff and his cellmate picked the cell door lock and left the cell without permission. See id. When defendant told them to go back to their cell, plaintiff tried to hide behind the restroom door. After some discussion, plaintiff and his cellmate voluntarily went back to their cell. Plaintiff told defendant "you will pay for this." See

---

[2]    Plaintiff was incarcerated in the Lyon County Detention Center in December of 2002 on an unrelated matter. During that stay, he threw a food tray in the booking area and refused to return to his cell. Defendant helped another jailer place plaintiff back in his cell.

[3]    The contraband included a razor blade, a ball point pen, two pieces of wire, a small copper metal ring, a cup full of batteries, and tobacco and rolling papers.

4

Martinez Report, Ex. N at D 77.  On May 5, 2003 plaintiff again violated lockdown by leaving his

room twice.

**May 20, 2003**

On May 20, 2003, defendant caught plaintiff attempting to pass a note to the female pod.[4]

Defendant repeatedly asked plaintiff to give him the note.  Plaintiff leaned up against a door and said,

"Fuck you.  Doug you big bad ass fat fuck."  See Ex. BB to Martinez Report, Affidavit of Crisp at

¶ 3.  Defendant told plaintiff to place his hands behind his back, and plaintiff refused.  Defendant

called for backup.  Defendant placed plaintiff's right arm behind plaintiff's back, and Officer Jillson

put handcuffs on plaintiff.  See id.  Defendant and three other officers walked plaintiff to his cell and

placed him against a wall while they waited for an officer in the tower to open the cell door.  Plaintiff

yelled at defendant and kicked him.  The officers took plaintiff to the ground, restrained him and

placed him in his cell.[5]

**June 22, 2003**

On June 22, 2003, plaintiff asked defendant about property that jailers had taken from him.[6]

Defendant told plaintiff that he had to fill out a form to get the information.  Plaintiff said, "I already

did that shit and none of them get answered."  See Ex. Y, Van Gundy Affidavit; Ex. BB, Crisp

---

[4]        At one point plaintiff's complaint refers to an incident on May 25, 2003.  It is
apparent, however, that plaintiff is actually referring to the incident on May 20, 2003.

[5]        Plaintiff presents his sworn statement that on May 20, 2003, he was the "victim of an
assault and battery" at the hands of defendant.  Plaintiff provides no further details concerning this
incident.

[6]        Although parts of plaintiff's complaint refer to injuries he received in an attack by
defendant on June 20, 2003, it is apparent that he is actually referring to the incident on June
22, 2003.

Affidavit.  After plaintiff called defendant a "bitch" and a "punk," defendant told plaintiff to go back to his cell.  See id.  Plaintiff called out "Fuck you, Doug," "Fuck you, pansy," "Fuck you, bitch" and "you punk ass mother fucker."  See Ex.Y, Van Gundy Affidavit  at ¶ 5.  As plaintiff was leaving, defendant said, "Bye, bye.  See you later."  See Ex. BB to Def.'s Mar. Rpt., Affidavit of Crisp at ¶ 6; see also Ex. O to Def.'s Mar. Rpt., June 2003 Jail Reports at D 98-99, 106.  As plaintiff walked toward his cell, he turned around, re-entered the booking area and poured water on defendant.  Plaintiff then rushed defendant, who tried to subdue him.  Officer Bledsoe observed the altercation from the tower and issued a Code Red, calling all officers to assist in booking.  Officers Michelle Herzog and Roger Brooks responded to assist defendant and another officer.  The officers took plaintiff to the floor to handcuff him.  Defendant put his elbow on plaintiff's neck and pushed him down while trying to get plaintiff's left arm to handcuff him.  In the process, defendant hit plaintiff two times in the shoulder area.

At this point the record contains varying accounts of the incident.  According to plaintiff, after officers had placed him in handcuffs, defendant beat him in the head and face and slammed his head into the floor.  Officer Brooks stated that after plaintiff was on the floor, defendant said something to plaintiff and slammed his head on the floor.  Officer Brooks reported that the hit "must have been pretty hard . . . I heard a thud and [saw] some blood coming from his eye.  Then I said 'Doug you don't need to do that we have already got him down.'"  Martinez Report, D. 108, Affidavit of Roger Brooks.  Officer Herzog stated that while plaintiff was on the floor before he was handcuffed, she told plaintiff to give her his arm and he said that he couldn't.  She heard a "crack" and saw that defendant had an angry expression on his face.  She heard Officer Brooks say "Doug" in a very commanding voice.  Officer Herzog told the investigator that in her opinion excessive force was

6

used.[7]

At some point the officers stood plaintiff up and took him back to his cell.  Officer Wright read plaintiff his <u>Miranda</u> rights and took pictures of him.  Plaintiff had a cut near his eye and appeared to have a bloody nose.  Plaintiff declined medical treatment.  Defendant had a bloody lip and a bruise around his right eye.

On October 22, 2003, a jury found plaintiff not guilty of the charges for which he was being held in the Lyon County Detention Center.  The following day, the District Attorney charged plaintiff with assaulting defendant on June 22, 2003.  Plaintiff entered a plea of nolo contendere to battery against a correctional officer in violation of K.S.A. 21-3413(a)(2), a level 5 felony, and received a 52-month prison sentence.

**Additional Incidents**

On June 23, 2003, an officer found a razor blade in plaintiff's tooth paste tube.  On July 11, 2003, plaintiff poured a cup of water down the back of defendant's head and neck and got the shift change logs and computer wet.  Plaintiff was placed on lockdown, lost all privileges for 30 days and had to wear restraints when out of his cell.

During an appeal hearing, plaintiff said that he had poured water down defendant's neck so he would get angry and do something to plaintiff.  Plaintiff also stated that he was trying to get defendant fired because of another incident.  Plaintiff filed Inmate Communication & Request forms regarding defendant.

On July 14, 2003, Undersheriff Richard Old responded to plaintiff's complaints about

---

[7]         The report did not specify who she thought used excessive force.

7

defendant.  Undersheriff Old determined that plaintiff had initiated all of the incidents and that defendant had followed procedure and acted reasonably and prudently during each incident.

## Analysis

Defendant seeks qualified immunity on plaintiff's claims of excessive force on May 20 and June 22, 2003.[8]  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Plaintiff was a pretrial detainee during the time of his allegations; his excessive force claim therefore arises under the Fourteenth Amendment.  See Thompson v. Hamilton, No. 97-6084, 1997 WL 639320, at *1 (10th Cir. Oct. 14, 1997).  The Tenth Circuit analyzes excessive force claims by pretrial detainees under the Eight Amendment standard.  See, e.g., Parsons v. Bd. of County Comm'rs, 873 F. Supp. 542 (10th Cir. 1994) (irrelevant whether plaintiff was pretrial detainee or convicted prisoner because plaintiff afforded no greater rights under Due Process Clause).

In the excessive force context, the qualified immunity defense protects officers from "reasonable mistakes as to the legality of their actions."  Saucier v. Katz, 533 U.S. 194, 206 (2001).  The Supreme Court has noted as follows:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's

_____

[8]    Defendant also seeks qualified immunity for a claim based on an incident on July 11, 2003.  The complaint does not set forth any claim based on that incident, however, and plaintiff has not alleged or produced facts to support such a claim.

mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Id. at 205.

In determining whether defendant is entitled to qualified immunity, the Court first determines whether taken in the light most favorable to plaintiff, the facts show that defendant violated a constitutional right. Id. at 200-01. If so, the Court determines whether the constitutional right was clearly established in light of the specific context of this case. Id. at 201. If plaintiff satisfies this two-part burden, defendant must demonstrate that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at the time. See Martin v. Bd. of County Comm'rs, 909 F.2d 402, 405 (10th Cir. 1990). If defendant makes such a showing of objective reasonableness, he is entitled to summary judgment unless plaintiff can demonstrate a factual dispute which is relevant to defendant's immunity claim. See id.

In order to prove an Eighth Amendment violation, plaintiff must show that defendants used excessive force which resulted in "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). While prison officials must occasionally resort to physical force to maintain or restore institutional order, they must also balance the institutional interest in order against the risk of harm to the inmate. See Hudson, 503 U.S. at 5. The core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6; see Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996).

**A.**   Incident On May 20, 2003

Even construed in the light most favorable to plaintiff, the record does not support an

9

inference that defendant's actions on May 20, 2003 violated the Eighth Amendment.  Defendant repeatedly asked plaintiff to hand over a note which plaintiff was attempting to pass to the female pod.  Plaintiff refused and called defendant names.  Defendant told plaintiff to place his hands behind his back, and plaintiff refused.  Defendant called for backup.  Defendant placed plaintiff's right arm behind plaintiff's back and another officer put handcuffs on plaintiff.  Defendant and three other officers took plaintiff to his cell and placed him against a wall while they waited for another officer to open the cell door.  Plaintiff yelled at defendant and kicked him.  The officers took plaintiff to the ground, restrained him and placed him in his cell.  Other than his conclusory sworn statement that on May 20, 2003, he was the "victim of an assault and battery at the hands of defendant," plaintiff provides no evidence concerning this event.  Plaintiff's conclusory statement is not sufficient to establish any underlying facts.  Defendant maintains that the officers were properly attempting to restrain plaintiff after he instigated the incident, and that they used appropriate force to restrain and control him.  See Brief In Support Of Defendant's Motion For Summary Judgment ("Defendant's Brief") (Doc. #22) filed July 22, 2005 at 25, 28-29.  Even construing the record in the light most favorable to plaintiff, the record indicates that officers were justified in taking plaintiff down after he kicked defendant.  Plaintiff has produced no evidence that defendant applied force "maliciously and sadistically to cause harm."  See Hudson, 503 U.S. at 5.  Plaintiff has not sufficiently alleged that defendant violated his constitutional right.  Defendant is entitled to qualified immunity on this claim.

B.      Incident On June 22, 2003

Construed in the light most favorable to plaintiff, the record supports an inference that on June 22, 2003, defendant violated the Eighth Amendment by using excessive force against plaintiff.  Plaintiff presents sworn evidence of the following facts.  Plaintiff was involved in a physical

altercation with defendant.  After officers restrained plaintiff with handcuffs, defendant beat plaintiff's face and head and slammed his head into the concrete floor.  Plaintiff suffered pain, a cut near his eye and a bloody nose.  Defendant asserts that the officers were properly attempting to restrain plaintiff and that they used appropriate force to restrain and control him.  See Defendant's Brief at 27.[9]  In ruling on defendant's motion for summary judgment, however, the Court must construe the record in the light most favorable to plaintiff.  Deepwater Invs., 938 F.2d at 1110.  Under this standard, the record indicates that officers were justified in taking plaintiff down after he hit defendant.  The record does not conclusively establish, however, that after plaintiff was in handcuffs and restrained on the floor, it was necessary to beat him in the face and smash his head into the floor.  Plaintiff has sufficiently alleged that defendant violated a constitutional right.

Because plaintiff alleges a constitutional violation, the Court must determine whether the constitutional right was clearly established in light of the specific context of this case.  Saucier, 533 U.S. at 201-02.  Ordinarily, in order for plaintiff to demonstrate that a law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992); see Anderson v. Creighton, 483 U.S. 635,

---

[9]        Specifically, defendant presents the following version of the facts: Plaintiff threw a cup of liquid on defendant and hit him in the head several times.  When defendant could not subdue plaintiff, three other officers joined defendant in trying to subdue plaintiff.  The officers took plaintiff to the floor in order to handcuff him.  Plaintiff wrestled with the officers and attempted to kick out of being held down.  Defendant put his elbow on plaintiff's neck and pushed him downward.  Defendant hit plaintiff two times in the shoulder area while trying to get his left arm.  Plaintiff was still resisting and another officer eventually pulled out plaintiff's left arm and handcuffed him.  Plaintiff had a cut near his eye and possibly a bloody nose.

640 (1987) (right clearly established if contours of right sufficiently clear so that reasonable official would understand what he is doing violates that right).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202.

Defendant asserts that he is entitled to qualified immunity because he subjectively believed that his actions were justified and his actions were objectively reasonable.  On this record, however, construing the facts in the light most favorable to plaintiff, defendant's actions violated plaintiff's clearly established rights under the Eighth Amendment.  See Hudson, 503 U.S. at 6-10 (allegations that officials held, punched and kicked inmate who was handcuffed and shackled sufficiently stated Eighth Amendment violation); Mitchell, 80 F.3d at 144-41 (beating shackled inmate with night sticks while shouting racial epithets violated Eighth Amendment); cf. Saucier, 533 U.S. at 205 (if officer reasonably believed that suspect was likely to fight back, officer justified in using more force than needed).

Defendant has not conclusively shown that his actions were objectively reasonable in light of the law and the information which he possessed.  See Martin, 909 F.2d at 405.  Accordingly, defendant is not entitled to qualified immunity on plaintiff's excessive force claim regarding events which took place on June 22, 2003.

Defendant also asserts that he is entitled to summary judgment on the merits of plaintiff's claim of excessive force on June 22, 2003.  As discussed above, however, construed in the light most favorable to plaintiff, the record supports an inference that defendant violated plaintiff's rights under the Fourteenth Amendment on June 22, 2003.  Defendant is not entitled to summary judgment on the merits of that claim.

12

C.      Plaintiff's Request To Add Additional Defendants

In his response, plaintiff asks the Court to allow him to name additional defendants "for their negligence." Doc. #33 at 4.  Because plaintiff has not followed the local rule for motions to amend a complaint, see D. Kan. R. 15.1, the Court will not construe plaintiff's response as a motion for leave to amend.  Even if the Court considered the merits of plaintiff's request to add defendants, such an amendment would be futile.  Plaintiff seeks to add Brett Vangundy, Detention Officer; Brian Anstey, Lyon County Jail Administrator; Richard Old, Undersheriff; Gary Eichorn, Sheriff; the Lyon County Sheriff's Department and the Lyon County Detention Center.  Except for Sheriff Eichorn and Officer Vangundy, the Court has already dismissed each of these individuals or entities as defendants.  See Order (Doc. #5) filed March 25, 2005.  For the same reasons set forth in the Order, the Court finds that plaintiff should not be allowed to add Sheriff Eichorn as a defendant.  As to Officer Vangundy, plaintiff alleges only that during the June 22, 2003 incident he yelled "Doug, Doug."  Plaintiff has not alleged that Officer Vangundy personally participated in use of excessive force, and the Court therefore finds that plaintiff should not be allowed to add him as a defendant.

**IT IS THEREFORE ORDERED** that defendant's Motion For Summary Judgment (Doc. #21) filed July 22, 2005 be and hereby is **SUSTAINED** in part.  Defendant is entitled to summary judgment on plaintiff's excessive force claims based on the incidents of May 20, 2003 and July 11, 2003.  Plaintiff's excessive force claim based on the June 22, 2003 incident remains for trial.

Dated this 10th day of January, 2006, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

13